950 F.2d 114
 60 USLW 2382, 14 Employee Benefits Cas. 2124
 BRICKLAYERS AND ALLIED CRAFTSMEN INTERNATIONAL UNION LOCAL
33 BENEFIT FUNDS, Appellant
v.
AMERICA'S MARBLE SOURCE, INC., d/b/a Amerimar; Coastal
Management Company, Inc.; Bally's Hotel and
Casino, Appellees.
 No. 91-5151.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 6, 1991.
Decided Dec. 4, 1991.
 
 Robert F. O'Brien and Mark E. Belland (argued), Tomar, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for appellant.
 Stephen S. Mayer and Jedd E. Mendelson (argued), Grotta, Glassman & Hoffman, P.C., Roseland, N.J., for appellees.
 Before MANSMANN and ALITO, Circuit Judges and DIAMOND, District Judge.*
 OPINION OF THE COURT
 ALITO, Circuit Judge:
 
 
 1
 The Bricklayers and Allied Craftsmen International Union Local 33 Benefit Funds ("Benefit Funds") appeal from an order of the United States District Court for the District of New Jersey dismissing their complaint, which asserted claims under the New Jersey Construction Workers' Fringe Benefit Security Act (the "Fringe Benefit Act"), N.J.STAT.ANN. § 34:11A-1--34:11A-12. The district court held that the Fringe Benefit Act was preempted by Section 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a). Because we agree that the Fringe Benefit Act is preempted by ERISA, we will affirm.
 
 I.
 
 2
 The Benefit Funds are three jointly administered, multi-employer, employee benefit trusts and plans established to provide benefits to employees of employers who have entered into collective bargaining agreements with Bricklayers and Allied Craftsmen International Union Local 33. A Board of Trustees representing both the employers and Local 33 administers the Benefit Funds in accordance with ERISA.
 
 
 3
 Pursuant to a collective bargaining agreement, members of Local 33 were employed by America's Marble Source, Inc. ("Amerimar") to help construct a hotel tower at Bally's Hotel and Casino ("Bally's") in Atlantic City. Amerimar was a subcontractor on the project. The construction of the tower was overseen by the prime contractor, Coastal Management Company, Inc. ("Coastal"). The plaintiff alleges that the collective bargaining agreement between Amerimar and Local 33 required Amerimar to contribute to the Benefit Funds and that Amerimar failed to make these contributions. The Benefit Funds claim that the delinquent contributions total $29,147.00.
 
 
 4
 To recover the contributions, the Benefit Funds filed suit against Amerimar, Bally's, and Coastal in the Superior Court of New Jersey. The complaint relied on the Fringe Benefit Act,[1] which provides that upon notice from a fringe benefit fund that a contractor or subcontractor is delinquent in fund contributions required by a collective bargaining agreement, the owner of the construction project or the prime contractor on the project must withhold monies owing to the allegedly delinquent party and pay them to the fund. N.J.STAT.ANN. § 34:11A-5(a). If the allegedly delinquent party does not submit a timely notice contesting liability, the manager or prime contractor must make payment to the fund even though no judgment against the allegedly delinquent party has been entered. Id. at § 34:11A-5(d). If the allegedly delinquent party contests liability, however, the owner or prime contractor must await judgment or the consent of the parties before making payment. Id. The complaint alleged that Bally's and Coastal had been advised of Amerimar's delinquencies but had failed to remit the required contributions.
 
 
 5
 Bally's and Coastal removed the case to the United States District Court for the District of New Jersey and moved to dismiss the complaint, alleging that the Fringe Benefit Act was preempted by ERISA § 514(a). The district court granted the motion and dismissed the complaint.[2] This appeal followed.
 
 II.
 
 6
 A. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.... The statute imposes participation, funding, and vesting requirements on pension plans.... It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." Shaw v. Delta Air Lines, 463 U.S. 85, 90-91, 103 S.Ct. 2890, 2896-97, 77 L.Ed.2d 490 (1983) (citations omitted).
 
 
 7
 ERISA provides a cause of action and remedies for an employer's failure to fulfill its obligations to make pension or welfare fund contributions pursuant to a plan or collective bargaining agreement. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), has always authorized civil suits to enforce the terms of a plan,[3] and suits to enforce terms requiring the payment of contributions have been brought under this provision. See, e.g., Bugher v. Feightner, 722 F.2d 1356 (7th Cir.1983), cert. denied, 469 U.S. 822, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984). In 1980, Congress added ERISA § 515, 29 U.S.C. § 1145, which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Congress also added § 502(g)(2), 29 U.S.C. § 1132(g)(2), which specifies the relief that must be awarded in a successful suit by a fiduciary to enforce § 515.
 
 
 8
 ERISA § 514(a), 29 U.S.C. § 1144(a), preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. The Supreme Court has noted that this preemption clause is "conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." FMC Corp. v. Holliday, --- U.S. ----, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). The Court has observed that "a law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." Shaw, 463 U.S. at 96-97, 103 S.Ct. at 2899-2900 (emphasis added); see also Mackey v. Lanier Collection Agency and Serv., 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988); Cefalu v. B.F. Goodrich Co., 871 F.2d 1290, 1293 (5th Cir.1989) ("[C]ourts have broadly construed the words 'relate to' in order to give the proper effect to the preemption language of ERISA.") Thus, the Court has "virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are pre-empted under § 514(a)." Mackey, 486 U.S. at 829, 108 S.Ct. at 2182; see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); Shaw, 463 U.S. at 98, 103 S.Ct. at 2900. In addition, a "state law is preempted if it regulates the matters regulated by ERISA: disclosure, funding, reporting, vesting and enforcement of benefits plans." Iron Workers Pension Fund v. Terotechnology, 891 F.2d 548, 553 (5th Cir.), cert. denied, Y--- U.S. ----, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990).
 
 III.
 
 9
 Applying these standards, we are convinced that the Fringe Benefit Act is preempted. First, the Act "relate[s] to" employee benefit plans governed by ERISA because the Act, by its terms, "has a connection with or reference to" such plans. Shaw, 463 U.S. at 97, 103 S.Ct. at 2900. Second, the Act impermissibly supplements ERISA's comprehensive enforcement scheme by creating a cause of action against, and imposing liability upon, entities that were not parties to any agreement obligating them to contribute to a fringe benefit fund. Cf. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). Finally, ERISA's legislative history supports preemption of the New Jersey statute.
 
 
 10
 A. By its terms, the Fringe Benefit Act "relat[es] to" ERISA because it "has a connection with [and] reference to an employee benefit plan." Shaw, 463 U.S. at 97, 103 S.Ct. at 2900. The Fringe Benefit Act applies to any "fringe benefit fund," which is defined as a fund, created under a collective bargaining agreement or trust indenture with a construction employer, "for the collection, investment and payment of fringe benefits." N.J.STAT.ANN. § 34:11A-2(d). The term "fringe benefits" is defined as "any benefits agreed to be paid by a construction employer to a fringe benefit fund." Id. at § 34:11A-2(c). ERISA regulates "employee benefit plans," 29 U.S.C. § 1003, a category that includes both welfare and pension plans. 29 U.S.C. § 1002(1), (2). Thus, it is apparent that the category of funds to which the Fringe Benefit Act specifically applies consists largely if not entirely of employee benefit plans governed by ERISA, and there is no dispute that the funds involved in this case are subject to ERISA. (Appellant's Br. at 6.) It follows that the Fringe Benefit Act "relates to [an] employee benefit plan" governed by ERISA,[4] ERISA § 514(a), 29 U.S.C. § 1144(a), and is therefore preempted. It is "virtually taken ... for granted that state laws which are 'specifically designed to affect employee benefit plans' are pre-empted under § 514(a)." Mackey, 486 U.S. at 829, 108 S.Ct. at 2185.
 
 
 11
 Furthermore, the Fringe Benefit Act "relate[s] to" ERISA because it regulates an area that ERISA regulates--the funding of benefit plans. By creating a new cause of action and imposing liability upon project owners and prime contractors who have not agreed to make contributions, the Fringe Benefit Act regulates how ERISA plans are funded. Consequently, the Fringe Benefit Act "relate[s] to" an area already regulated by the provisions of ERISA that address the nonpayment of contributions by employers to employee benefit plans. As the district court aptly wrote in this case, "the fact that the Fringe Benefits Act may provide a complementary or more efficient means of effectuating the same purposes as ERISA is irrelevant, because the '[p]re-emption provision was intended to displace all state laws that fall within its sphere....' " (J.A. at 19a (quoting Metropolitan Life, 471 U.S. at 739, 105 S.Ct. at 2389)).
 
 
 12
 The Benefit Funds contend that even if the Fringe Benefit Act affects ERISA plans, it does so in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. We disagree. While the Supreme Court stated in Shaw that the relationship between ERISA plans and some state laws may be too "tenuous, remote, or peripheral" to warrant preemption of the state laws, the Fringe Benefit Act does not affect ERISA benefit plans in a "tenuous, remote, or peripheral" manner. The New Jersey statute affects one of the main components of ERISA plans--funding. The Fringe Benefit Act creates a new cause of action and expands liability so as to help ensure the funding of ERISA plans. Funding is not a tenuous, remote, or peripheral component of ERISA plans. See Terotechnology, 891 F.2d at 556.
 
 
 13
 B. Our conclusion that the Fringe Benefit Act is preempted is supported by a prior decision covering an analogous state law. We have previously held that ERISA § 514(a) preempted a state statute that provided a supplementary mechanism for collecting contributions for employee benefit plans. In McMahon v. McDowell, 794 F.2d 100 (3d Cir.), cert. denied, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986), former employees of Mesta Machine attempted, under Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 PA.CONS.STAT.ANN. § 260.1 et seq., to recover unpaid employee benefit plan obligations from officers and directors of the company. We held that ERISA § 514(a) preempted the WPCL insofar as it imposed personal liability on the individual defendants. 794 F.2d at 106-07. We wrote:
 
 
 14
 Insofar as the WPCL authorizes the liability of Mesta or of its directors and officers for unpaid employee benefit plan obligations, it obviously relates, refers, and pertains to the underlying employee benefit plans.... Had Congress intended to impose the additional liability sought by plaintiff, it surely knew how to do so. However, it chose not to authorize this sort of personal liability.
 
 We added:
 
 15
 WPCL ... does not merely relate to Mesta's pension plans, it competes with the mechanism that Congress carefully established in ERISA itself....
 
 
 16
 Id. at 106-07.
 
 
 17
 See also, Prestridge v. Shinault, 552 So.2d 643 (La.Ct.App.1989); Gilbert v. Burlington Indus., Inc., 765 F.2d 320, 327 (2d Cir.1985), aff'd, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); Holland v. Burlington Industries, 772 F.2d 1140, 1147 (4th Cir.1985), aff'd sub nom., Brooks v. Burlington Indus., Inc., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559, cert. denied sub nom., Slack v. Burlington Indus., Inc., 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); but see Sasso v. Vachris, 66 N.Y.2d 28, 494 N.Y.S.2d 856, 484 N.E.2d 1359 (1985).
 
 
 18
 We believe that this reasoning applies to the Fringe Benefit Act. Like the Pennsylvania WPCL, the Fringe Benefit Act creates a new mechanism for collecting delinquent contributions and requires payments by parties not subject to suit under ERISA. Under the reasoning of McMahon, the Fringe Benefit Act cannot supplement the remedies that Congress provided to enforce employer contributions.[5]
 
 
 19
 Other courts have also found that § 514 preempts state laws similar to the Fringe Benefit Act. In Iron Workers Mid-South Pension Fund v. Terotechnology Corp., 891 F.2d 548 (5th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990), the Fifth Circuit examined a Louisiana statute that provided a state remedy for the failure of an employer to make contributions to employee fringe benefit funds, as required by a collective bargaining agreement. The court was faced with a situation almost identical to the present one. A subcontractor had failed to fulfill its obligations under a collective bargaining agreement by not contributing to employee fringe benefit funds. Eventually both the unions and the funds filed liens under the Louisiana statute against the contractor and the owner of the property on which the work had been done. Id. 891 F.2d at 550. The Fifth Circuit held that the statute was preempted by ERISA because "[t]he [Louisiana statute] relates to ERISA plans by its terms, as it provides an alternative method to enforce the collection of contributions owed to plans." Id. at 556. The court added that the state statute also "specifically attempt[ed] to regulate the funding of employee benefit plans, and attempt[ed] to provide an enforcement mechanism not provided by ERISA." Id. at 554. In addition, the court observed that this regulation was accomplished by making a party other than the employer liable for the contributions and by creating a method of enforcement not found in ERISA. Id. at 556.
 
 
 20
 The California Supreme Court recently reached a similar result in Carpenters S. California Admin. Corp. v. El Capitan Dev. Co., 53 Cal.3d. 1041, 282 Cal.Rptr. 277, 811 P.2d 296, cert. denied, --- U.S. ----, 112 S.Ct. 430, 116 L.Ed.2d 450 (1991), which involved a statute similar to Louisiana's. The California statute provided that "an express trust fund established pursuant to a collective bargaining agreement to which payments are required to be made on account of fringe benefits supplemental to a wage agreement for the benefit of a claimant on particular real property shall have a lien on such property in the amount of the supplemental fringe benefit payments owing to it pursuant to the collective bargaining agreement." 282 Cal.Rptr. at 278 n. 1, 811 P.2d at 297 n. 1. The California Supreme Court held that this statute was preempted by ERISA. The court noted that the statute was "specifically designed to affect employee benefit plans," id. at 281, 811 P.2d at 300, and that the statute regulated ERISA plans "by providing an additional method of funding." Id. at 283, 811 P.2d at 302. "In essence," the court wrote, the statute created "a new state cause of action for the collection of contributions owed to benefit plans and [made] an additional entity liable for such contributions." Id., 282 Cal.Rptr. at 283, 811 P.2d at 302.
 
 
 21
 C. Although the Benefit Funds contend that the legislative history of ERISA and the 1980 amendments show that Section 514(a) was not intended to preempt state legislation such as the Fringe Benefit Act, we believe that the legislative history fully supports preemption. In Ingersoll-Rand Co. v. McClendon, --- U.S. ----, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990), the Supreme Court discussed Congress' broad preemptive intent. The Court noted that "the key to § 514(a) is found in the words 'relate to,' " and that "Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA.' " Id. (quoting Shaw, 463 U.S. at 98, 103 S.Ct. at 2900). Similarly, in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987), the Court noted the comments of Senator Williams, a sponsor of ERISA, who stated:
 
 
 22
 It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.
 
 
 23
 Id. (quoting 120 Cong.Rec. at 29,933 (1974)) (emphasis added). See also Shaw, 463 U.S. at 99-100 n. 20, 103 S.Ct. at 2901 n. 20 describing the remarks of Sen. Javits. ("but for certain exceptions," ERISA provides for "the displacement of State action in the field of private employee benefit programs.")
 
 
 24
 The Benefit Funds rely upon a few statements in the legislative history of the 1980 amendments. Not only were these statements made long after § 514(a) was enacted, but we do not interpret them to mean that even in 1980 Congress contemplated that § 514(a) would permit state legislation such as the Fringe Benefit Act.[6] Thus, we believe that the relevant legislative history strongly supports preemption in this case.
 
 
 25
 D. The Benefit Funds make several additional arguments that we will discuss briefly. The Benefit Funds argue that the Fringe Benefit Act is in essence a garnishment statute and that therefore, under Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825, 108 S.Ct. at 2182 (1988), the Act should not be preempted. In Mackey, the Supreme Court held that Georgia's general garnishment statute was not preempted by ERISA as a means of collecting judgments against ERISA funds. Id. at 831-32, 108 S.Ct. at 2186. The Georgia statute, however, was unlike the Fringe Benefit Act. The Georgia statute was a generally applicable procedural mechanism for collecting judgments. It provided "no substantive causes of action, no new bases for relief, or any grounds for recovery; the Georgia garnishment law [did] not create the rule of decision in any case affixing liability. Rather ... [it] [was] nothing more than a method to collect judgments otherwise obtained by prevailing on a claim against the garnishee." Mackey, 486 U.S. at 834-35 n. 10, 108 S.Ct. at 2188 n. 10 (emphasis in original). The Fringe Benefit Act, by contrast, applies only to fringe benefit funds, creates substantive rights, and imposes liability upon parties who would not otherwise be liable. Thus, Mackey's holding regarding Georgia's general garnishment statute does not apply to the Fringe Benefit Act.[7]
 
 
 26
 The Benefit Funds contend that ERISA § 514(a) could not have been intended to preempt state laws that provide a mechanism for collecting delinquent contributions to ERISA plans because ERISA itself lacked any such mechanism until Sections 502(g)(2) and 515, 29 U.S.C. § 1132(g)(2) and 1145, were added in 1980. We are unpersuaded by this argument. While Sections 502(g)(2) and 515 were added to facilitate the collection of delinquent obligations, See Laborers Trust Fund v. Advanced Lightweight Concrete Co., Inc., 484 U.S. 539, 546-49, 108 S.Ct. 830, 834-36, 98 L.Ed.2d 936 (1988), federal law from the time of ERISA's inception provided causes of action to obtain delinquent contributions. Suits to collect contributions due under a plan were brought under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), see supra at 117, and had been brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, long before ERISA was enacted. See Lewis v. Benedict Coal Corp., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960). Thus, state law causes of action were never needed to collect contributions owed to ERISA plans.
 
 
 27
 Finally, the Benefit Funds claim that the interplay between ERISA § 514(d), 29 U.S.C. § 1144(d), and Fed.R.Civ.P. 64 precludes the preemption of the New Jersey statute.[8] Section 514(d) provides that ERISA generally does not "alter, amend, modify, invalidate, impair, or supersede" any federal law, rule, or regulation. Rule 64 adopts all state remedies "for the seizure of ... property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action...." We reject the argument that these provisions rescue the Fringe Benefit Act from preemption. First, the Fringe Benefit Act does more than provide a remedy for the seizure of property to secure satisfaction of a subsequent judgment; rather, the Act may require a project owner or prime contractor to make payments without any judgment. See supra at 116. Here, for example, Bally's and Coastal, after receiving notice of the Benefit Funds' claims, would have been required, unless Amerimar contested those claims or unless Bally's and Coastal did not owe Amerimar money, to make payments to the Funds even though no judgment had been obtained. Second, we interpret Fed.R.Civ.P. 64 to incorporate only valid state remedies, not state remedies that are preempted or otherwise invalid. Acceptance of the Benefit Funds' contrary argument would lead to absurd results. Had the present case not been removed from state court, Fed.R.Civ.P. 64 obviously would not have applied and therefore could not have saved the Fringe Benefit Act from preemption. Consequently, the Benefits Funds' argument would mean that the Fringe Benefit Act would be preempted in state court but not in federal court. Clearly, neither ERISA § 514(d) nor Rule 64 was meant to produce such consequences.
 
 IV.
 
 28
 In summary, we hold that the Fringe Benefit Act "relate[s] to" ERISA employee benefit plans governed by ERISA, 29 U.S.C. § 1144(a), and is therefore preempted. The order of the district court will be affirmed.
 
 
 
 *
 Hon. Gustave Diamond, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The key provision of the Fringe Benefits Act, N.J.STAT.ANN. § 34:11A-5, provides:
 a. Upon receipt of the notice [from the trustees of a benefits fund that a subcontractor is delinquent in payments to the fund] ... a private or public project owner shall withhold from the sums otherwise due the prime contractor, a sum equal to the amount claimed due by the fringe benefit fund and any further sums subsequently demanded by the fringe benefit fund arising out of work performed at the private or public project, which sums shall be segregated from the construction fund and held in trust by the private or public project owner or deposited with the clerk of the Superior Court and paid to the fringe benefit fund claiming the delinquency.
 b. The amount withheld or deposited by the private or public project owner shall not exceed the amount due and owing from that owner to the prime contractor at the time notice is received by the owner.
 c. The extent to which notice for a subcontractor delinquency shall create liability upon the owner shall be limited to the amount due and owing, at the time notice is received, by the owner to the prime contractor, or by the prime contractor to the delinquent subcontractor or by the subcontractor who is in privity with the delinquent subcontractor, whichever is less.
 d. Payment by the private or public project owner to the fringe benefit fund shall be made within 45 days of such demand, unless and only to the extent that the subcontractor or prime contractor against whom such delinquency claim has been asserted notifies the owner and the fringe benefit fund in writing by certified mail, return receipt requested, prior to the expiration of the 45 day period that it contests the claim of the fringe benefit fund. Whenever a notice of contest has been sent by the claimed delinquent construction employer, the private or public project owner shall hold a sum in the amount claimed due by the fringe benefit fund as trustee and payment therefrom shall be made upon the entry of a final judgment of a court of competent jurisdiction or upon receipt of the consent of all of the parties.
 N.J.STAT.ANN. 34:11A-5.
 
 
 [2]
 The district court gave the Benefit Funds leave to amend the complaint to assert a claim against Amerimar for delinquent contributions under Section 502 of ERISA, 29 U.S.C. § 1132. The Benefit Funds chose not to file an amended complaint. (Appellants' Br. at 9 n. 3). Therefore, the district court's order is final and appealable under 28 U.S.C. § 1291. Welch v. Folsom, 925 F.2d 666, 668 (3d Cir.1991); Trevino-Barton v. Pittsburgh Nat'l Bank, 919 F.2d 874, 878 (3d Cir.1990); Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir.1976)
 
 
 [3]
 ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) authorizes a civil suit "by a participant, beneficiary, or fiduciary ... (B) to obtain other appropriate equitable relief ... (ii) to enforce any provisions of this subchapter or the terms of the plan."
 
 
 [4]
 Indeed, the plaintiffs in this case admitted as much in the district court by noting that "the state statute at issue may technically relate to an employee benefit plan...." (Pl.'s Mem.Opp. to Def.'s Mot. to Dismiss at 8.)
 
 
 [5]
 The Benefit Funds argue that the Fringe Benefit Act differs from the portion of the WPCL invalidated in McMahon. They note that the Fringe Benefit Act requires project owners and prime contractors to make payments only to the extent that they are holding or receive money that is owed to the delinquent party; whereas the WPCL made individual corporate officers and directors personally liable for delinquent corporate contributions. This appears to be a distinction of practical significance, but it is not dispositive for present purposes. ERISA § 514(a) preempts any state law insofar as it "relate[s] to" an ERISA benefit plan, and therefore the degree to which the state law alters or supplements ERISA's enforcement scheme is generally not significant
 
 
 [6]
 The Benefit Funds rely chiefly on the following statement concerning the provisions that ultimately became 29 U.S.C. §§ 1132(g)(2) and 1145. In a joint explanation, the Senate Labor and Finance Committees stated:
 The bill preempts any State or other law which would prevent the award of reasonable attorneys fees, court costs or liquidated damages or which would limit liquidated damages to an amount below the 20 percent level.
 However, the bill does not preclude the award of liquidated damages in excess of the 20 percent level where an award of such higher level of liquidated damages is permitted under applicable State or other law. This does not change any other type of remedy permitted under State or Federal law with respect to delinquent multiemployer plan contributions.
 
 
 [126]
 Cong.Rec. 20,202 (1980) (emphasis added)
 The first highlighted sentence merely states that a plan may contain a provision assessing liquidated damages in an amount greater than 20% unless prohibited by state law; this statement does not suggest that a state may create extracontractual enforcement mechanisms. The second statement is ambiguous. Read in context, it may refer to generally available post-judgment remedies. In any event, this statement alone is clearly not sufficient to show that the Fringe Benefit Act is not preempted.
 
 
 [7]
 On the contrary, Mackey supports preemption here. While the Supreme Court held that the general Georgia garnishment statute was not preempted, the Court held that ERISA did preempt a Georgia statute specifically barring the garnishment of the funds or benefits of an ERISA plan. The Court held that this provision was preempted because it singled out ERISA plans for different treatment. Here, the Fringe Benefits Act similarly singles out ERISA plans for special treatment. Mackey, 486 U.S. at 830, 108 S.Ct. at 2185
 
 
 [8]
 This issue was never raised in the district court, and "[w]e generally refuse to consider issues that are raised for the first time on appeal." Frank v. Colt Industries, Inc., 910 F.2d 90, 100 (3d Cir.1990), (quoting Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir.1976))