BURGIO AND CAMPOFELICE,
INC., Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF
LABOR; Thomas P. Hartnett, Industri-
al Commissioner of the State of New
York; Charles C. Drobner, Director of
Bureau of Public Work, New York State
Department of Labor; Robert Abrams,
Attorney General of the State of New
York, Defendants.

No. 93–CV–334C.

United States District Court,
W.D. New York.

Jan. 22, 1996.

As Corrected March 11, 1996.

Zdarsky, Sawicki & Agostinelli (Guy J. Agostinelli, of counsel), Buffalo, New York, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York (Pico Paul Ben–Amotz, of counsel), New York City, for Defendants.

CURTIN, District Judge.

## BACKGROUND

Plaintiff Burgio & Campofelice, Inc. ("B & C"), a general contractor, seeks to enjoin the defendant New York State Department of Labor ("DOL") from enforcing the State's prevailing benefit supplement laws against B & C for benefit supplements which B & C's subcontractor, Shared Management Group, Ltd., allegedly failed to pay. The plaintiff claims that such state laws are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

B & C entered into a public works construction contract on February 4, 1992, in the amount of $8,130,273, to build a new middle school for the Williamsville Central School District. One month later, B & C subcontracted the masonry for the project to Division 4 Masonry, Inc., at a cost of $2,398,000. The masonry work began in the spring of 1992, and continued until the middle of December, 1992. On December 18, 1992, the president of Division 4 Masonry informed B & C that Division 4 Masonry had not paid certain union-related benefit funds to its workers. On December 30, 1992, B & C was served with a notice of levy by the Internal Revenue Service that listed two names: Shared Management, Inc., and Division 4 Masonry.

B & C learned that Division 4 Masonry had further subcontracted its portion of the contract to Shared Management, Inc. B & C never entered into any kind of agreement with Shared Management, nor did it employ any of the workers hired under the sub-sub-contract. On January 8, 1993, Division 4 Masonry stopped its work on the project, and B & C was forced to find another subcontractor to finish the masonry work.[1]

On February 12, 1993, the Department of Labor issued a notice pursuant to § 220 of the New York Labor Law directing the Williamsville School District to withhold $350,900.00 in payments to B & C. This amount represented wages, wage supplements, interest, and penalties. On May 3, 1993, the Department of Labor clarified the amount and provided a detailed break down of the amounts: $191,845 in wage supplements, $27,467.36 in wages, $35,090.11 in interest, and $63,600.83 in penalties, for a total of approximately $318,000. The plaintiff now seeks to enjoin the withholding of these payments as well as a declaratory judgment that the state law is preempted.

The defendants originally moved to dismiss the complaint on three grounds. They first argued that the court lacked subject matter jurisdiction over DOL, which, as an agency of New York State, is immune from suit under the Eleventh Amendment to the U.S. Constitution. Secondly, the defendants claimed that the second cause of action should be dismissed because the Eleventh Amendment bars plaintiffs from suing state officials for violations of state law in federal district court. Finally, the defendants contended that the plaintiff had no standing to bring suit under ERISA because it is not an employer, beneficiary, or trustee of an ERISA plan.

In its decision and order of January 12, 1995, the court struck the Department of Labor from the complaint and dismissed the plaintiff's second cause of action for lack of subject matter jurisdiction. The court found that plaintiff did have the requisite standing to maintain its complaint against the defendant state officials for its first cause of action.

Plaintiff's remaining claim is that ERISA preempts defendants from holding plaintiff liable for a subcontractor's underpayments of non-wage supplements subject to ERISA by virtue of the Supremacy Clause of the United States Constitution.

---

**1.** There seemed to be a dispute over the name of a subcontractor and the Federal Employer Identification numbers of those subcontractors. One of the contractors is named Division *4* Masonry, and another is named Division *Four* Masonry. However, for this case, it is clear that the subcontractor involved in this agreement is Division 4 Masonry.

## DISCUSSION

### 1. New York Labor Law §§ 220 and 223 are preempted by ERISA as they relate to plaintiff's claim.

■ The fundamental question in the present case is the nature and source of the liability at issue. The parties agreed at oral argument that when an employer defaults on payments owed an ERISA benefits plan, the Department of Labor cannot pursue an alternative state law enforcement mechanism because the state statute is preempted by ERISA. If however, the employer is liable for any other kinds of payments, the Department of Labor can pursue alternative enforcement mechanisms, and can hold the employer to state statutory wage and supplement obligations.

Plaintiff, therefore, argues that the liability at issue in this case was incurred by the defaulting subcontractor who failed to make payments into a union-sponsored ERISA plan. Defendants argue that the plaintiff is liable independently of any ERISA obligation of the defaulting subcontractor, under New York State Labor Law § 223.

These arguments are complicated by the fact that there is no bright-line test for determining whether a state law claim is preempted by ERISA. Section 514(a) of ERISA reads:

> Except as provided in subsection (b) of this section, the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (1994) (emphasis added).

■ Section 514(a) was intended to have a "sweeping preemptive effect in the employee benefit plan field." *American Progressive Life and Health Ins. Co. v. Corcoran,* 715 F.2d 784, 786 (2d Cir.1983). Congress intended ERISA to "preempt all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA." *Wadsworth v. Whaland,* 562 F.2d 70, 77 (1st Cir. 1977), *cert. denied,* 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978).

■ A state law "relates to" employee benefit plans when it has "connection with or reference to" such plans, *Gilbert v. Burlington Indus., Inc.,* 765 F.2d 320, 327 (2d Cir. 1985), *aff'd sum.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986) (quoting *Shaw v. Delta Air Lines,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)), or "whenever it 'purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans.' 29 U.S.C. 1144(c)(2) (1976)." *Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323, 329 (2d Cir.1982), *aff'd sum. sub nom. Arcudi v. Stone & Webster Engineering Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983).

■ But while state actions "relate to" ERISA plans when they have a connection with or reference to such plans, some state actions may affect employee benefit plans in "too tenuous, remote or peripheral a manner" to warrant a finding that the law "relates to" the plan. *Shaw,* 463 U.S. at 100, n. 21, 103 S.Ct. at 2901, n. 21.

New York Labor Law § 220(3) provides that wages and supplements paid on public works shall not be less than the prevailing wage rates as defined by the statute. Section 220(4)(b) defines supplements to include all remuneration other than wages. New York Labor Law § 223 makes a contractor monetarily liable for noncompliance or evasion on the part of a subcontractor, even where there are no other grounds on which to hold the contractor liable.

In *General Electric Co. v. New York State Department of Labor,* 891 F.2d 25 (2d Cir. 1989) (hereinafter *"GE I"*), the Second Circuit noted that the requisite "connection exists where a state statute prescribes either the type and amount of an employer's contributions to a plan, the rules and regulations under which the plan operates, or the nature and amount of the benefits provided thereunder." *Id.* at 29 (citations omitted). After analyzing New York Labor Law §§ 220(3) and 220(5), the court stated that "[s]ection 220 intrudes into all three of these preempted areas," *id.,* holding that "the above described provisions of section 220 clearly relate to the ERISA plans of ex-

locality employers and are preempted by the federal statute." *Id.* at 30.

In a subsequent decision in the same case, the Second Circuit modified its position by drawing a distinction between the non-ERISA supplements provisions of § 220 and the ERISA supplements provisions. *General Electric Co. v. New York State Department of Labor,* 936 F.2d 1448 (2d Cir.1991) (hereinafter *"GE II"*). The court affirmed the holding of the district court that the supplement provisions of § 220 were valid to the extent they applied to [plaintiff's] non-ERISA benefits, such as, for example, vacation and holiday pay, even though such benefits could have been included in an ERISA plan. *Id.* The Court of Appeals held that although the distinction might lead to some "curious" outcomes, the New York State legislature would have preferred severance of the non-ERISA supplements provisions to the invalidation of all supplements provisions. *Id.*

In the present case, plaintiff relies principally on *GE I* to argue that ERISA's enforcement scheme is exclusive and preempts alternative enforcement mechanisms, including § 220 as it applies to the facts of this case. Therefore, plaintiff argues, the Department of Labor cannot require plaintiff to pick up where the defaulting subcontractor, Shared Management Group, left off in its obligations to fund benefit plans. Item 27, p. 4.

In support of the *GE I* holding, plaintiff refers to *Bricklayers and Allied Craftsmen International Union Local 33 Benefit Funds v. America's Marble Source, Inc.,* 950 F.2d 114 (3d Cir.1991). In that case, the Third Circuit found that the New Jersey Fringe Benefit Act impermissibly supplemented ERISA's comprehensive enforcement scheme by creating a cause of action against, and imposing liability upon, entities that were not parties to a collective bargaining agreement requiring them to contribute to a fringe benefit fund. 950 F.2d at 118. Specifically, the court noted:

"By creating a new cause of action and imposing liability upon project owners and prime contractors who have not agreed to make contributions, the Fringe Benefit Act

regulates how ERISA plans are funded. Consequently the Fringe Benefit Act 're-late[s] to' an area already regulated by the provisions of ERISA that address the non-payment of contributions by employers to employee benefit plans."

*Id.*

Plaintiff also cites *Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320 (2d Cir.1985), *aff'd mem.* 447 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986). The *Gilbert* court found that employees cannot bring state law claims to enforce the direct liability of employers for promised wages and benefits, when those employees also have the right, as plan beneficiaries, to sue their employee benefit plan under ERISA. The *Gilbert* court found that to hold otherwise would undermine the uniformity of plan administration that ERISA was designed to promote. 765 F.2d at 327–28.

Defendants distinguish the present case from the courts' holdings in *Gilbert* and *Bricklayers* by arguing that New York Labor Law § 223 has nothing to do with ERISA plans. Unlike the statutes in *Gilbert* and *Bricklayers,* defendants maintain that:

[S]ection 223 makes no reference to ERISA plans, evidences no design to affect such plans by providing for collection of delinquent plan contributions or bestowal of denied benefits, let alone purport to regulate areas that ERISA regulates. All that section 223 does is make the contractor on a public work contract responsible for a subcontractor's failure to comply with the statutory provisions of the prevailing wage law.

Item 31, p. 12.

Defendants counter that while the former scheme for enforcing supplement payments was found to be preempted by ERISA in *GE I, GE II* recognized a clear distinction between ERISA and non-ERISA supplement payment plans. Defendants asserted both at oral argument and in its briefs that the *GE II* court found that ERISA preemption only operated where the employer was paying into an ERISA plan. The case did not invalidate the New York State statutory wage requirements or preclude the Department of

Labor from enforcing supplement requirements against non-ERISA benefits. Item 24, p. 8.

Defendants argue that because plaintiff "does not have any ERISA plans that could possibly be affected by the Department's prevailing wage investigation," and is required only to "make a single lump-sum cash payment" directly to the affected masonry workers in order to satisfy the total amount due on the project, ERISA does not preempt the state statute in this case. Consequently, the Department of Labor can require plaintiff to "pay the full prevailing rate of benefits set by reference to collective bargaining agreements in the locality." Item 24, pp. 8, 9. (quoting *GE II,* 936 F.2d at 1461).

In support of its argument, defendants first cite *Keystone v. Foley,* 37 F.3d 945 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995) suggesting that court's approach should be adopted. In *Keystone,* the Third Circuit found that ERISA did not preempt Pennsylvania's Prevailing Wage Act. *Id.* In so holding, the court opined that it might come to a different conclusion if the statute was enforced using a line-item approach: "[U]nder a line-item approach the Prevailing Wage Act would create incentives favoring some types of benefits over others, even though it would still allow employers to substitute cash for benefits, and this would appear to exceed the state's authority under ERISA." *Id.* at 963.

Defendants depart from this opinion to argue that since *GE I* was decided while the Department of Labor used a line-item approach, the *GE I* court must have implicitly employed the same reasoning as the *Keystone* court in preempting § 220. Defendants claim that subsequent to the *GE I* decision, the Department of Labor changed its enforcement policy to credit employers for all their plan contributions, not just those within the maximum line-item levels recognized by ERISA, as had been the practice. According to defendants, this change ended the Department of Labor's prescription of the nature and/or amount of benefits which employers like General Electric provided under their ERISA plans. Item 24, p. 7. Since the enforcement method has changed, defen-

dants argue, the *Keystone* reasoning should now be adopted. Item 24, pp. 10–13.

Defendants then argue that the Supreme Court's most recent opinion on ERISA preemption, *New York Conference of Blue Cross v. Travelers Ins.,* —— U.S. ——, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), requires a more narrow application of preemption than that previously made by the Second Circuit. Item 31, p. 5. At oral argument, defendants stated that until *Travelers,* the courts had moved toward broader and broader interpretations of ERISA preemption, but *Travelers* signals a new direction.

Specifically, defendants cite *Travelers* for the proposition that state laws are not preempted if they have only an indirect economic impact on ERISA plans. Defendants read *Travelers* to say that an indirect economic influence is one that does not bind plan administrators to any particular choice of plan, but rather simply bears on the cost of benefits. Defendants then argue that New York Labor Law § 220 does not bind employers or plan administrators to any particular choice of plan. Instead, § 220 affects plan choice only indirectly by affecting the costs of providing benefits. Item 31, p. 6.

Finally, defendants introduced at oral argument the Second Circuit's decision in *Greenblatt v. Delta Plumbing & Heating Corp.,* 68 F.3d 561 (2d Cir.1995). Defendants argued that the *Greenblatt* court held that when a surety's obligation is independent of the collective bargaining agreement, an action against it is not preempted because ERISA only preempts an obligation incurred under the collective bargaining agreement to fund the union plans. Defendants then argued that in the present case, *Greenblatt* requires that the plaintiff assume the liability of the employer because the plaintiff has an independent state statutory duty independent of the actual employer's ERISA obligation.

This court disagrees with defendants' principal assertion that because plaintiff would not be making a payment to a union-sponsored ERISA plan, but rather a lump-sum payment directly to workers pursuant to Labor Law § 223, ERISA does not preempt.

Defendants argue that Labor Law § 223 is completely independent of § 220, and any obligation of the plaintiff based on that section qualifies as a non-ERISA supplement payment which does not preempt § 220, pursuant to *GE II.* Item 24, p. 8.

This assertion is not persuasive because New York Labor Law § 223 cannot be read independently of § 220. Plaintiffs argue forcefully that Labor Law § 223 must be read in conjunction with § 220, which clearly relates to ERISA plans insofar as supplements are concerned. Defendants cannot use Labor Law § 223 as an alternative means of enforcing the failure of an employer to contribute to an ERISA plan. Such an approach is no different than the attempt made by the employees in the *Burlington* case to impose a state law cause of action under Labor Law § 198–c which was found to be preempted by ERISA.

Moreover, the nature of the original obligation, incurred by the defaulting subcontractor, is central to the ERISA/non-ERISA severance scheme established by the court in *GE II.* The court's holding in that case was aimed at preserving New York State's prevailing wage law to the extent possible in the face of the federal ERISA statute. *GE II,* 936 F.2d at 1461. Hence, the court's focus was necessarily on the obligations of subcontractors at the time they bid on public works projects in order to ensure that bidders who provided no benefits were not in a position to underbid those who did. *Id.* This focus requires that the distinction between ERISA and non-ERISA liability be made at the bidding stage.

When the defaulting subcontractor in the present case made its bid, that bid should have accounted for the ERISA supplements payments it was required to make by the collective bargaining agreement. That the subcontractor's ERISA liability might later be assumed by the general contractor who makes a non-ERISA payment to workers is irrelevant to the ERISA/non-ERISA distinction.

Defendants' *Keystone* analysis is similarly unpersuasive in that it fails to sufficiently distinguish the present case from *GE I.* Although defendants emphasize the change in the Department of Labor's enforcement strategy, the *GE I* court was not as concerned with the intricacies of enforcement as the *Keystone* court, and did not explicitly consider the use of the line-item approach. *GE I,* 891 F.2d at 28, 29. The court briefly noted the method of enforcement in its analysis of § 220 in order to illustrate how the Department of Labor required employers to bring their pension and welfare plans into conformity with those prevailing in the locality. *Id.* Regardless of changes in the method of establishing conformity with local levels, the Department of Labor continues to require conformity, pursuant to the requirements of § 220. It is the requirement of conformity by a state statute, not the method of enforcement, that the *GE I* court found preempted by ERISA. *Id.* at 29, 30.

Moreover, this court does not see where the *Travelers* decision represents a relevant change in the direction of the Court as to ERISA preemption. The Court held in *Travelers* that a New York statute requiring hospitals to collect surcharges from patients whose employee health care plans are governed by ERISA did not "relate to" employee benefit plans within the meaning of ERISA's preemption provision and, accordingly, was not preempted. —— U.S. ——, ——–——, 115 S.Ct. 1671, 1678–80. The Court found the surcharges to have only an "indirect economic influence" on the choices made by insurance buyers. *Id.* at ——, 115 S.Ct. at 1679. The Court stated:

> [L]aws with only an indirect economic effect on the relative costs of various health insurance packages in a given State are a far cry from those "conflicting directives" from which Congress meant to insulate ERISA plans.... We therefore conclude that such state laws do not bear the requisite "connection with" ERISA plans to trigger pre-emption.

*Id.* at ——, 115 S.Ct. at 1680.

This language does not weaken *GE I,* as plaintiff contends. Rather, it is consistent with the framework established by the Second Circuit in that decision. The *GE I* court found that New York Labor Law § 220, as it relates to ERISA supplements, was one of

 

those conflicting directives from which Congress meant to insulate ERISA plans. Specifically, the court stated:

> The Supreme Court holds that under ERISA, "private parties, not the Government, control the level of benefits." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 511 [101 S.Ct. 1895, 1900, 68 L.Ed.2d 402] (1981). The New York courts hold that under section 220, "the Commissioner of Labor, not the contractor, determine[s] the supplements to be provided." *A.L. Blades & Sons, Inc. v. Roberts*, 136 A.D.2d 926, 927, 524 N.Y.S.2d 912 [ (1988) ]. These courts are adjudicating in the same area but reaching inconsistent results, and that is exactly what ERISA was designed to prevent.

*GE I*, 891 F.2d at 28.

Nor is the court persuaded by defendants' reliance on the Second Circuit's decision in *Greenblatt.* The *Greenblatt* court held ERISA's definition of an employer did not include a surety in that case. The court found that there was no "direct assumption of the employer's functions with regard to the administration of a plan." Instead, the court found that it was "confronted only with a contractual relationship separate from the collective bargain agreement by which the surety guaranteed payment of a certain sum if the contractor defaulted on its obligations." 68 F.3d at 575.

In the present case, there was no contractual obligation between the plaintiff and the defaulting subcontractor as to ERISA contributions. In this case, plaintiff faces liability only because the subcontractor defaulted on his ERISA obligations. Although defendants claim their state cause of action is based on plaintiff's independent state statutory liability, defendants cannot escape the fact that if the subcontractor had made its ERISA contributions, plaintiff would face no liability at all.

Consequently, this court finds that New York Labor Law § 223 is fundamentally linked to Labor Law § 220, which has been found to be preempted by ERISA. Therefore, § 223 "relates to" ERISA benefit plans within the meaning of ERISA § 514(a), and is preempted by ERISA.

### CONCLUSION

For the above reasons, plaintiff's motion for summary judgment is granted. Defendants' cross-motion for summary judgment is denied.

So ordered.