107 F.3d 1000
 65 USLW 2612, 134 Lab.Cas. P 58,305,
20 Employee Benefits Cas. 2593,
3 Wage & Hour Cas.2d (BNA) 1405,
Pens. Plan Guide (CCH) P 23932B
 BURGIO AND CAMPOFELICE, INC., Plaintiff-Appellee,
v.
NYS DEP'T OF LABOR; Thomas P. Hartnett, Industrial
Commissioner of the State of New York; Charles C. Drobner,
Director of Bureau of Public Work, New York State Department
of Labor and Robert Abrams, Attorney General of the State of
New York, Defendants-Appellants.
 No. 233, Docket 96-7210.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 24, 1996.
Decided March 4, 1997.
 
 Pico Paul Ben-Amotz, Assistant Attorney General of the State of New York, New York City (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Daniel F. DeVita, Assistant Attorney General in Charge of Labor Bureau, M. Patricia Smith, Assistant Attorney General, of counsel), for Defendants-Appellants.
 Guy J. Agostinelli, Buffalo, NY (Zdarsky, Sawicki & Agostinelli, Gerald T. Walsh, of counsel) for Plaintiff-Appellee.
 Colleran, O'Hara & Mills, Garden City, NY, (Denis A. Engel, of counsel) for New York State AFL-CIO, Amicus Curiae.
 Gary S. Tell, Trial Attorney, U.S. Department of Labor, Washington, DC, J. Davitt McAteer, Acting Solicitor of Labor, Marc I. Machiz, Associate Solicitor, Plan Benefits Security Division, Karen L. Handorf, Counsel for Special Litigation, Plan Benefits Security Division, for Secretary of Labor, Amicus Curiae.
 Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, for Building and Construction Trades Department, AFL-CIO, Amicus Curiae.
 Patrick E. Brown, Justin E. Driscoll, II, Plunkett & Jaffe, P.C., Albany, NY, for New York State Building and Construction Trades Council, AFL-CIO, Amicus Curiae.
 Blitman & King, LLP, Syracuse, NY (Jennifer A. Clark, of counsel), for Rochester Laborers' Pension, Welfare-S.U.B., Annuity Funds, et al., Amicus Curiae.
 Before: LUMBARD, FEINBERG and WALKER, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Defendants New York State officials (collectively defendants or the State), responsible for enforcing the state labor statute under challenge here, appeal from a judgment of the United States District Court for the Western District of New York, John T. Curtin, J., granting the motion of plaintiff-appellee Burgio and Campofelice, Inc. (Burgio) for summary judgment. Burgio and Campofelice, Inc. v. New York Dep't of Labor, 914 F.Supp. 931 (W.D.N.Y.1996). Burgio, a general contractor, brought this action (1) to enjoin the State from enforcing New York Labor Law §§ 220, 223 (McKinney 1986 ed. and Supp.1997) (the prevailing wage law), against Burgio for wage supplements that Burgio's subcontractor allegedly failed to pay its employees; and (2) to declare the prevailing wage law preempted by federal law. Relying on our decision in General Electric Co. v. New York State Dep't of Labor, 891 F.2d 25 (2d Cir.1989) (GE I ), the district court held that the state law was preempted under the Supremacy Clause of the United States Constitution, art. VI, cl. 2, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. The State unsuccessfully argued that it had substantially revised those aspects of its enforcement strategy that, according to GE I, subjected the prevailing wage law to ERISA preemption. The judge rejected this assertion. Because we disagree with the district court's treatment of the State's claims regarding its enforcement strategy, we vacate and remand for further proceedings consistent with this opinion.
 
 I. Background
 A. The Prevailing Wage Law
 
 2
 Section 220 of the New York Labor Law was originally designed to insure that employees on public works projects were paid wages equivalent to the prevailing rate of similarly employed workers in the locality. Because the statute made no reference to fringe benefits, bidders on public works contracts who provided no such benefits were in a position to underbid those who did. Accordingly, section 220 was amended in 1956 to require that all bidders on public works contracts assume the cost of prevailing wage supplements in the locality, N.Y.Lab. Law § 220(3), thus presumably putting all bidders on an even footing. GE I, 891 F.2d at 28.
 
 
 3
 Wage supplements are defined to include "all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not 'wages' within the meaning of the law, including, but not limited to, health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay, life insurance, and apprenticeship training." N.Y.Lab. Law § 220(5)(b). A fiscal officer, who in most cases is the Commissioner of Labor, is authorized to ascertain and determine the prevailing rates of wages and wage supplements for all public works. N.Y.Lab. Law § 220(3) (third undesignated paragraph). Those prevailing rates are determined by reference to collective bargaining agreements between labor organizations and employers, provided such agreements cover at least 30 percent of the workers in the same trade or occupation in the locality where the work is to be performed. N.Y.Lab. Law §§ 220(5)(a), 220(3) (second undesignated paragraph), 220(5)(c).
 
 
 4
 The statute makes the prime contractor on a public works project financially responsible for a subcontractor's failure to comply with the requirements of § 220, and authorizes the fiscal officer to bring an action to enforce its provisions. N.Y.Lab. Law § 223.
 
 
 5
 Exactly how the wage supplements requirement is applied is a crucial matter in dispute between the parties. When we decided GE I, it appears that the State followed a "line-item" approach whereby the Commissioner of Labor prescribed prevailing benefits levels for each individual type of wage supplement. In each instance where the cost of a supplement provided for in an employment contract did not correspond with the cost of a similar prevailing local benefit, section 220 required the employer either to bring the cost of its prescribed benefit into equivalence with the cost of the local prevailing one or to pay the additional cost directly to the employee-beneficiaries. The employer was not permitted to substitute one form of supplement for another, and received no credit under the statute for the cost of providing benefits not deemed to be "prevailing benefits" by the Commissioner. 891 F.2d at 27. The Commissioner's position was in accord with the New York Supreme Court, Appellate Division, which held that "the statute indicates that the Legislature intended that the Commissioner of Labor, not the contractor, determine the supplements to be provided and that the employee receive either the listed benefits or equivalent cash (or a combination of both)." A.L. Blades & Sons, Inc. v. Roberts, 136 A.D.2d 926, 927, 524 N.Y.S.2d 912 (4th Dept.1988) (mem.) The court in GE I concluded that the prevailing wage law applied in this manner was preempted by ERISA.
 
 
 6
 Burgio argues that the State's enforcement procedure during 1992-93, the time-frame relevant here, did not differ from the enforcement procedure used in GE I. The State counters that it abandoned its "line-item" policy in response to GE I, and adopted what it calls a "total package" policy.[1] Under this "new" approach, the State claims that it "simply requires employers to match the total cost of all prevailing supplements. Employers are no longer required to match one-for-one the specific prevailing rate for each prevailing supplement, or even to provide each type of prevailing supplement." Thus, according to the State, the total package approach avoids those requirements that led the GE I court to find preemption. The State claims that it used this "total package" approach in conducting its investigations in this case.
 
 
 7
 The district court did not make an explicit finding on whether the approach claimed by the State was in fact used during the relevant period, believing that the point, even if established, would not sufficiently distinguish this case from GE I. Burgio & Campofelice, 914 F.Supp. at 936.
 
 B. The Public Works Contract
 
 8
 In February 1992, Burgio entered into a public works construction contract with the Williamsville Central School District in the amount of $8,130,273 to construct a new middle school. The following month, Burgio subcontracted with another company (the subcontractor) to perform the masonry on the project, at a cost of $2,398,000. Masonry work commenced shortly thereafter and continued through mid-December 1992, when the subcontractor informed Burgio that certain union-related benefits had not been paid. Burgio was subsequently served with a notice of levy by the Internal Revenue Service listing the subcontractor and another company. In early January 1993, Burgio discovered that the subcontractor had subcontracted its portion of the contract to that other company (the sub-subcontractor), which had entered into collective bargaining agreements with the unions representing bricklayers, laborers and operating engineers working on the project. Those collective bargaining agreements contemplated contributions to benefit plans covered by ERISA. These contributions are part of the "wage supplements" taken into account by the State in administering the prevailing wage law. Burgio never entered into any kind of agreement with the sub-subcontractor, nor did it employ any of the workers hired under the sub-subcontract.
 
 
 9
 In January 1993, the subcontractor stopped work on the project. Burgio was forced to find another subcontractor to complete the masonry work. That same month, the sub-subcontractor filed a Chapter 11 petition in bankruptcy, which has since been dismissed.
 
 C. Prior Proceedings
 
 10
 In February 1993, defendant New York State Department of Labor (DOL) issued a notice pursuant to § 220 of the New York Labor Law directing the Williamsville School District to withhold $350,900.00 in payments to Burgio. That amount purported to cover, pending further investigation, wages and/or wage supplements, plus interest and penalties, which may be due employees as laborers, workers or mechanics employed on the project by the sub-subcontractor. In May 1993, DOL issued its Notice of Labor Law Inspection Findings, estimating that the sub-subcontractor owed its employees some $27,467.36 in wages and $191,845.85 in wage supplements, for a total assessment of $318,004.15 including interest and a 25% penalty.
 
 
 11
 In April 1993, Burgio brought this action seeking (1) relief pursuant to 28 U.S.C. § 2201 declaring that the state prevailing wage law, under which the payment to Burgio is being withheld, is unconstitutional under the Supremacy Clause and ERISA's broad preemption clause, 29 U.S.C. § 1144, and (2) an injunction pursuant to 28 U.S.C. § 2202 restraining defendants from enforcing the prevailing wage law against Burgio. In January 1995, in response to defendants' motion to dismiss, the district court ruled that Burgio had standing to litigate its claim that ERISA preempts the prevailing wage law.
 
 
 12
 The judge also struck DOL from the complaint on Eleventh Amendment grounds and dismissed a cause of action in Burgio's complaint that alleged that defendants violated state law by withholding the funds. Burgio does not contest either ruling.
 
 
 13
 In January 1996, the district court issued a second opinion granting Burgio's motion for summary judgment and denying the remaining individual defendants' cross-motion for summary judgment. This appeal followed.
 
 II. Standing and Cause of Action
 
 14
 We review the district court's grant of summary judgment de novo. We view the evidence in the light most favorable to the party opposing the motion, taking as true any factual allegations in that party's pleading, if they are supported by affidavits or other evidentiary material. General Elec. Co. v. New York State Dep't of Labor, 936 F.2d 1448, 1452 (2d Cir.1991) (GE II ).
 
 
 15
 Defendants argue that Burgio "lacks standing to bring a cause of action under the civil enforcement mechanism of ERISA § 502(a) and has no other cause of action in this case." The district court did not specifically identify Burgio's cause of action. It determined that there was federal question jurisdiction, 28 U.S.C. § 1331, and concluded that Burgio had standing as an "interested party." We agree that Burgio may bring this action.
 
 
 16
 Burgio clearly has standing in the ordinary sense, as that term has been defined by the Supreme Court. By complaining that the State has wrongfully caused the withholding of a significant sum of money owed to Burgio pursuant to a statute preempted by federal law, Burgio has alleged a concrete and immediate injury, caused by defendants, which is likely to be redressed by favorable action in this court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).
 
 
 17
 As we understand the State's argument, it concedes in its main brief that the district court had federal question jurisdiction under 28 U.S.C. § 1331, but asserts that this "does not mean that Burgio has an underlying cause of action in this case." The State's claim is that Burgio does not.
 
 
 18
 ERISA § 502(a) authorizes certain categories of complainants to bring a civil enforcement action. A plan participant, beneficiary, or fiduciary may sue to enforce the ERISA statute or terms of a plan, 29 U.S.C. § 1132(a)(3). Similarly, the Secretary of Labor may bring an action to enforce the statute itself, 29 U.S.C. § 1132(a)(5). This court has held that an ERISA enforcement action may only be brought by a party specified in ERISA § 502(a). Albradco, Inc. v. Bevona, 982 F.2d 82, 85-86 (2d Cir.1992). It is beyond dispute that Burgio does not fall within any of the listed categories. As defendants contend, this action is therefore not one commenced directly under ERISA's civil enforcement provisions. See Franchise Tax Bd. v. California Laborers Vacation Trust, 463 U.S. 1, 27, 103 S.Ct. 2841, 2855-56, 77 L.Ed.2d 420 (1983).
 
 
 19
 The reason for Burgio's suit is to enable it to collect the money the Williamsville School District owes Burgio under its public works contract. Toward that end, Burgio seeks relief from state enforcement of a law Burgio contends is preempted by ERISA and the Supremacy Clause. Defendants respond that the Supremacy Clause does not confer any substantive constitutional rights, citing Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 107-08, 110 S.Ct. 444, 449-50, 107 L.Ed.2d 420 (1989) and Andrews v. Maher, 525 F.2d 113, 118-19 (2d Cir.1975).
 
 
 20
 Burgio argues that it can bring this action under the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Court in that case found "ample justification for the assertion that individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings ... to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." Id. at 155-56, 28 S.Ct. at 452.
 
 
 21
 Although there is some confusion in the cases, we agree with those commentators who have concluded that "[t]he best explanation of Ex parte Young and its progeny is that the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution or laws." 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3566, at 102 (1984); see also Guaranty Nat'l Ins. Co. v. Gates, 916 F.2d 508, 512 (9th Cir.1990) (quoting same). But see Legal Envtl. Assistance Found., Inc. v. Pegues, 904 F.2d 640, 643 (11th Cir.1990). As the Supreme Court has stated, "the availability of prospective relief of the sort awarded in Ex parte Young gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 425-26, 88 L.Ed.2d 371 (1985).
 
 
 22
 Both the Supreme Court and this court have entertained similar claims brought against state officials by plaintiffs arguing that ERISA preempted contrary state law. In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Court noted that:
 
 
 23
 [i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. See Ex parte Young. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve. This Court, of course, frequently has resolved pre-emption disputes in a similar jurisdictional posture.
 
 
 24
 Id. at 96 n. 14, 103 S.Ct. at 2899 n. 14 (citations omitted); see also Stone & Webster Eng'g Corp. v. Ilsley, 690 F.2d 323, 327-28 (2d Cir.1982), aff'd. mem. sub nom., Arcudi v. Stone & Webster Eng'g Corp., 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983).
 
 
 25
 Defendants argue that these cases are not controlling here "[s]ince the issue of whether plaintiffs had a cause of action in Stone & Webster and Shaw was neither raised by the parties nor otherwise addressed by the courts." Defendants rely on two Supreme Court cases, Franchise Tax Board, 463 U.S. at 27, 103 S.Ct. at 2855-56, and Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and one of our own, Albradco, 982 F.2d at 85, to argue a contrary conclusion. We are not persuaded.
 
 
 26
 Franchise Tax Board was a suit by a state entity against a union benefit fund seeking a declaration that state laws were not preempted by ERISA. It did not involve the situation we have here, a suit brought against state officials to enjoin enforcement of an allegedly unconstitutional act. Indeed, the Supreme Court itself distinguished between the two situations in Shaw, decided the same day, where it made clear that the Court's decision in Franchise Tax Board did not affect the vitality of Ex parte Young. 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14. Albradco involved a suit between private parties. We said there that "[b]ecause [plaintiffs] have not sued state officials to enjoin them from enforcing an unconstitutional state law, this case is distinguishable from Shaw and Stone & Webster," 982 F.2d at 87.
 
 
 27
 In Seminole Tribe, the Supreme Court first found that the Indian Commerce Clause does not confer upon Congress the authority to make a state suable in federal court under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701 et seq. The Court then considered whether alternatively the plaintiff had an Ex parte Young action to enforce rights created under the IGRA against state officials. The Court ultimately concluded that it did not, cautioning that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon Ex parte Young." Seminole Tribe, 517 U.S. at ----, 116 S.Ct. at 1132. Defendants now argue that because ERISA, like the IGRA, prescribes a detailed remedial scheme, Seminole Tribe requires that we not permit actions against state officials under Ex parte Young. We disagree.
 
 
 28
 First, the Court in Seminole Tribe took great pains to assert the continued viability of Ex parte Young. See 517 U.S. at ---- n. 14, ---- n. 16, ---- n. 17, 116 S.Ct. at 1131 n. 14, 1131 n. 16, 1133 n. 17. Second, the concerns that animated the Court in Seminole Tribe are not present here. In Seminole Tribe, the plaintiff sought to enforce the substantive provisions of the IGRA. In this case, Burgio "do[es] not seek to enforce against [New York] any cause of action created by Congress; and no congressionally mandated remedial scheme is implicated. Instead, [Burgio] seek[s] only to prevent [New York officials] from violating the Supremacy Clause ... by encroaching on legal terrain that Congress has properly deemed preempted." CIGNA Healthplan of La. v. Louisiana, 82 F.3d 642, 644 n. 1 (5th Cir.1996). We have previously recognized that "[a] claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law." Western Air Lines, Inc. v. Port Authority of New York and New Jersey, 817 F.2d 222, 225 (2d Cir.1987). The coincidence that the federal law in question in this case contains its own preemption language, 29 U.S.C. § 1144, does not affect this distinction. Id. at 226. In sum, we conclude that the district court properly held that Burgio could bring its action.[2]
 
 III. ERISA Pre-emption
 
 29
 We now turn to the question whether if (as the State contends) it used a total package approach in applying the prevailing wage law here, ERISA preempts that law.
 
 
 30
 ERISA subjects to federal regulation plans providing employees with certain fringe benefits. It is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. The statute imposes on benefit plans requirements regarding participation, funding and vesting, and sets uniform standards for reporting, disclosure and fiduciary responsibility. ERISA does not mandate that employers provide any particular benefits. Shaw, 463 U.S. at 91, 103 S.Ct. at 2896-97. Under ERISA, "private parties, not the Government, control the level of benefits." Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 511, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981).
 
 
 31
 Section 514(a) of ERISA promotes uniform regulation of employee benefits plans by preempting, with certain exceptions not relevant here, "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The goal of that section "was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990).
 
 
 32
 The preemption language of ERISA § 514(a) is "deliberately expansive." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). "Pre-emption does not occur, however, if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, Shaw [463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21], as is the case with many laws of general applicability...." District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (1992). Moreover, "in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, we have worked on the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, ----, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995) (internal citations and quotation marks omitted). See Massachusetts v. Morash, 490 U.S. 107, 119, 109 S.Ct. 1668, 1675-76, 104 L.Ed.2d 98 (1989) ("The States have traditionally regulated the payment of wages...."); GE II, 936 F.2d at 1455 (state enjoys authority to set prevailing wage or hour restrictions on public works projects). Thus, the Supreme Court recently held that a prevailing wage statute that merely alters the incentives, but does not dictate the choices, facing ERISA plans was "no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate." California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., --- U.S. ----, ----, 117 S.Ct. 832, 842, 136 L.Ed.2d 791 (1997) (holding that ERISA does not preempt California's prevailing wage act which requires payment of prevailing wages to employees in apprenticeship programs that have not received state approval but allows payment of lower apprenticeship wages to employees in state-approved programs). Ultimately, the intent of Congress controls our preemption analysis. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 515-17, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992).
 
 
 33
 The outer edges of ERISA preemption are difficult to discern from the limiting phrase "relates to." Construction of this language can easily extend too far. A unanimous Supreme Court has quite recently admonished that we "simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Travelers, 514 U.S. at ----, 115 S.Ct. at 1677. Turning to the legislative history of the statute, the Travelers court found that the "basic thrust of the pre-emption clause ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Id. at ----, 115 S.Ct. at 1677-78. The Court then analyzed its prior treatment of the provision, concluding that two kinds of state laws "relate to" ERISA for preemption purposes: those that "mandat[e] employee benefit structures or their administration," and those that "provid[e] alternative enforcement mechanisms." Id. at ----, 115 S.Ct. at 1678.
 
 A. Effect on Benefits and Administration
 
 34
 As stated earlier, the district court ruled that ERISA preempts the prevailing wage law based on our holding in GE I. In response to the State's arguments that it had modified the enforcement policy under scrutiny in GE I, the district court stated that the GE I court was not concerned with the details of the State's policy and did not explicitly consider the use of the line-item approach. 914 F.Supp. at 936. But in GE I, we set forth a detailed version of what is now the first part of the Travelers test. We said that a state law "purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans" whenever it "prescribes either the type and amount of an employer's contributions to a plan, the rules and regulations under which the plan operates, or the nature and amount of the benefits provided thereunder." GE I, 891 F.2d at 29 (internal citations omitted). Applying that test, we found that DOL's then-current enforcement approach intruded upon all three of these preempted areas. Id. at 29-30. However, we think a different conclusion would result under the State's total package approach, which it claims to be "benefit neutral."
 
 
 35
 The State claims that under its "new" approach, an employer need not establish or contribute to any particular type of pension or welfare plan in any particular amount. According to the affidavit submitted to the district court by DOL's attorney, an employer may provide supplemental benefits in any form or combination so long as the sum total is not less than locally prevailing benefits. Burgio's total liability would thus be the same whether the subcontractor had bargained to provide benefits exclusively through ERISA plans, exclusively through non-ERISA plans, through additional cash wages, or through some combination of the three. "Where a legal requirement may be easily satisfied through means unconnected to ERISA plans, and only relates to ERISA plans at the election of an employer, it 'affect[s] employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan.' Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21." Keystone Chapter, Assoc. Builders and Contractors, Inc. v. Foley, 37 F.3d 945, 960 (3d Cir.1994), cert. denied, 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995). Under such an enforcement scheme, it is no longer true that "under section 220, 'the Commissioner of Labor, not the contractor, determine[s] the supplements to be provided.' " GE I, 891 F.2d at 28 (quoting A.L. Blades, 136 A.D.2d at 927, 524 N.Y.S.2d 912).
 
 
 36
 The State further argues that the law does not in any way affect the administration or regulation of ERISA benefit plans. While a contractor or subcontractor must produce records showing that it has paid the prevailing wage rates and paid or provided supplements, it need not maintain such records in any particular form. See N.Y.Lab. Law § 220(3-a)(a). We think preemption does not occur where a state law places on ERISA plans administrative requirements so slight that the law "creates no impediment to an employer's adoption of a uniform benefit administration scheme." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 14, 107 S.Ct. 2211, 2219, 96 L.Ed.2d 1 (1987). In sum, if the State's factual contentions are correct, as we must assume in reviewing this award of summary judgment to Burgio, the State's total package approach avoids those "conflicting directives" which we found required preemption in GE I.
 
 
 37
 The district court buttressed its contrary conclusion with an analysis of this court's decision in GE II, 936 F.2d at 1460-61, where following the remand in GE I we upheld against an ERISA preemption challenge the application of Labor Law § 220 to enforce non-ERISA benefits such as vacation and holiday pay. But in that case, we were not presented with, and thus did not decide, whether a total package enforcement policy of the prevailing wage law would be preempted by ERISA.
 
 
 38
 We recognize that Burgio argues that the State's enforcement approach had not changed fundamentally when it made its claim against Burgio here. It is for that reason, as already indicated, that we remand to the district court to determine whether DOL did actually employ its "new" approach here.
 
 B. Alternative Enforcement Mechanism
 
 39
 Nor does the prevailing wage law fail Travelers ' second preemption test by creating an "alternative enforcement mechanism" for ERISA plan obligations. Burgio contends that Labor Law § 223 creates such a mechanism by adding to the remedies available for recovery of unpaid ERISA contributions.
 
 
 40
 This court recognized that alternative enforcement mechanisms could provide a ground for preemption in Gilbert v. Burlington Industries, Inc., 765 F.2d 320 (2d Cir.1985), aff'd. mem. sub nom., Roberts v. Burlington Industries, Inc., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986). In that case, we rejected state law claims seeking to enforce a severance pay policy determined earlier to constitute an ERISA plan, on the grounds that such claims "would determine whether any benefits are paid, and directly affect the administration of benefits under the plan." Id. at 327. Some five years later, the Supreme Court struck down on a similar theory a Texas law which "purport[ed] to provide a remedy for the violation of a right expressly guaranteed by [ERISA] § 510 and exclusively enforced by § 502(a)." Ingersoll-Rand, 498 U.S. at 145, 111 S.Ct. at 486. The Court reasoned that the " 'carefully integrated civil enforcement provisions found in § 502(a) ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.' " Id. at 144, 111 S.Ct. at 485 (quoting Pilot Life, 481 U.S. at 54, 107 S.Ct. at 1556-57). Most recently, relying on Ingersoll-Rand, we struck down on preemption grounds a New York State law which would have made the 10 largest shareholders of a corporation liable for unpaid contributions to corporate ERISA funds. Romney v. Lin, 94 F.3d 74, 80-83 (2d Cir.1996), petition for reh'g denied, 105 F.3d 806 (2d Cir.1997). The Romney court found that an action brought by a plan fiduciary to recover delinquent payments fell "within the scope of" the civil enforcement mechanism of ERISA, § 502(a), which " 'Congress intended ... to be the exclusive remedy for rights guaranteed under ERISA....' " 94 F.3d at 80 (quoting Ingersoll-Rand, 498 U.S. at 144, 111 S.Ct. at 485-86).
 
 
 41
 These cases are inapposite. Burgio's obligation does not arise under ERISA or a collective bargaining agreement providing for ERISA benefits, but directly under Labor Law § 223. The monies that have been withheld from Burgio are not owed to an ERISA plan, to whom the sub-subcontractor failed to pay contributions, but to individual workers. See N.Y.Lab. Law § 220(3) (second undesignated paragraph). DOL, not the ERISA plans, will collect the monies due and disburse them to those workers. DOL has apparently received assignments from many of the aggrieved workers directing that any monies determined to be due by DOL's action be paid directly to the union funds. However, the State avers that it no longer honors such assignments and that all payments would be made directly to the affected workers, a factual contention that Burgio disputes. If the facts are as the State contends, the ERISA plans will not recover delinquent obligations via the state statute. The State's enforcement action would therefore not fall "within the scope of" ERISA's civil enforcement mechanism. This, too, is a factual matter for resolution in the district court.
 
 
 42
 Finally, Burgio argues that application of the prevailing wage law against a general contractor, regardless of the enforcement policy, puts the contractor into an "untenable position." If the general contractor complies with the State's notices and pays workers directly the amounts that the subcontractor should have paid to a union benefit fund, the latter remain unpaid pursuant to the terms of the collective bargaining agreement with the subcontractor. In that case, the union funds could then make a claim against the general contractor under the general contractor's payment bond. This court held open the possibility of such a claim in Bleiler v. Cristwood Const., Inc., 72 F.3d 13, 16 (2d Cir.1995). Burgio argues that this potential double liability "doesn't make much sense."
 
 
 43
 Burgio's argument is speculative at best. Also, we note that the prevailing wage law does not place a contractor's surety in any different position with respect to ERISA and non-ERISA benefit plans, and therefore does not, it seems to us, "relate to" ERISA for preemption purposes. Finally, since both actions implicated in Burgio's double liability scenario arise under state law, Burgio's grievance lies with the New York State Legislature, which enacted the laws. An ERISA preemption action is not the appropriate vehicle by which to decide such matters, particularly since Burgio cannot, as a non-signatory to the collective bargaining agreements with the unions, be held liable to the benefit plans as an "employer" under ERISA. See 29 U.S.C. §§ 1002(5), 1145; Bleiler, 72 F.3d at 15-16.
 
 C. Other Circuits
 
 44
 Finally, our conclusion that New York's prevailing wage law, if a total package approach is used, is not preempted accords with decisions of other circuits that have considered similar state laws. See WSB Electric, Inc. v. Curry, 88 F.3d 788, 794-96 (9th Cir.1996); Keystone, 37 F.3d at 956-64; see also Minnesota Chapter of Assoc. Builders and Contractors, Inc. v. Minnesota Dept. of Labor, 47 F.3d 975, 978-80 (8th Cir.1995). But see Assoc. Builders and Contractors v. Perry, 869 F.Supp. 1239 (E.D.Mich.1994). In Keystone, the Third Circuit upheld Pennsylvania's prevailing wage statute against a preemption challenge, finding that:
 
 
 45
 [u]nder at least one reasonable interpretation of the Act and regulations, an interpretation the Agency is free to adopt, the Act and regulations merely require that the Secretary set a prevailing wage that consists of a cash component and may include a benefits component. Employers must pay the cash component of the wage in cash, but they may pay the benefits component either in benefits or cash. Any benefits they provide, regardless of type, would count toward the benefits component.
 
 
 46
 37 F.3d at 956. The court then engaged in a thorough analysis of such a program, concluding that it would "not relate to employee benefit plans in more than a tenuous, remote and peripheral manner." Id. at 963. We see no reason to treat differently the total package approach put forward by the State here.
 
 IV. Conclusion
 
 47
 In sum, we believe that Congress did not mean to preempt state prevailing wage statutes such as New York's when the total package approach is used. For the foregoing reasons, we vacate the decision of the district court. We remand for further proceedings consistent with this opinion, including primarily a factual determination concerning the enforcement policy employed by DOL during the term of the subcontract.
 
 
 
 [1]
 One of the amicus briefs characterizes the State's "new" approach as not a true "total package" but rather as a "two-tier" scheme. Cf. Scott Miller, The Preemptive Effect of ERISA on the Prevailing Wage Act, 29 J. Marshall L.Rev. 55, 63-69 (1995). We take no position as to the proper characterization of the State's approach. However, for convenience, we adopt its terminology in this opinion
 
 
 [2]
 As indicated above, defendants also rely on Golden State Transit v. Los Angeles, 493 U.S. at 107-08, 110 S.Ct. at 449-50, and our decision in Andrews v. Maher, 525 F.2d at 118-19. However, Andrews predates the Supreme Court's decision in Shaw, and the observation in Golden State relied on by Burgio was made in the context of a claim under 42 U.S.C. § 1983 for damages, not a claim under 28 U.S.C. §§ 1331, 2202 and the Supremacy Clause for injunctive relief