HMI MECHANICAL SYSTEMS, INC., Compensation Programs, Inc. and The CPI Open Shop Plan, by its Administrator, Everett P. Strong, Plaintiffs–Appellants,

v.

James J. McGOWAN, Commissioner, New York State Department of Labor, New York State Department of Labor, Dale Stanley, Supervisor, Bureau of Public Works, New York State Department of Labor and Eliot Spitzer, Attorney General of the State of New York, Defendants–Appellees.

Docket No. 00–7427.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 2000.

Decided Sept. 28, 2001.

Robert A. Doren, Bond, Schoeneck & King, LLP (Subhash Viswanathan, on the brief), Buffalo, NY, for Appellant HMI Mechanical Systems, Inc.

Stephen A. Pechenik, Pechenik & Curro, P.C., Troy, NY, and Adams, Dayter & Sheehan, LLP, Albany, NY, for Appellants Compensation Programs, Inc. and The CPI Open Shop Plan.

Pico Paul Ben–Amotz, Assistant Attorney General, (Eliot Spitzer, Attorney General, Michael S. Belohlavek, Deputy Solicitor General, Marion R. Buchbinder, Assistant Solicitor General, M. Patricia Smith, Assistant Attorney General, on the brief) New York, NY, for Appellees.

Gail Ann Perry, United States Department of Labor (Henry L. Solano, Solicitor

of Labor, Allen H. Feldman, Acting Associate Solicitor, Karen L. Handorf, Counsel for Special Litigation, on the brief), Washington, DC, for Amicus Curiae U.S. Secretary of Labor.

Maurice Baskin, Venable, LLP, Washington, DC, for Amicus Curiae Associated Builders and Contractors, Inc.

Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, DC; Robert M. Archer, Michael A. Ciaffa, and Jennifer D. Weekley, Meyer, Suozzi, English & Klein, P.C., Mineola, NY; Patrick E. Brown, Justin E. Driscoll, II, Plunkett & Jaffe, P.C., Albany, NY, for Amici Curiae Building and Construction Trades Department, AFL–CIO, and New York State Building and Construction Trades Council, AFL–CIO.

Before: WALKER, Chief Judge,
POOLER, Circuit Judge, and HALL,
District Judge.*

POOLER, Circuit Judge:

Plaintiffs HMI Mechanical Systems, Inc. ("HMI") and Compensation Programs, Inc. and The CPI Open Shop Plan (collectively, "CPI") appeal from the March 20, 2000, judgment of the United States District Court for the Northern District of New York (Scullin, *J.*) granting summary judgment to defendants James J. McGowan, et al., of the New York State Department of Labor ("NYSDOL" or "the state"). Plaintiffs challenge the state's efforts to enforce a prevailing wage statute by arguing that the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., preempts the state's chosen enforcement method. Because we find that NYSDOL's implementation of the prevailing wage statute—using an annualization formula—has no impermissible impact on workers' benefits plans, we affirm dismissal of plaintiffs' lawsuit.

## BACKGROUND

HMI is a business with about 40 non-union workers that is engaged in mechanical, plumbing and HVAC contracting, and it often performs work on publicly funded projects in New York. Pursuant to New York Labor Law § 220, when HMI performs public work projects, it is required to pay employees working on those projects the locally prevailing wage.[1] Most generally, area collective bargaining agreements serve as a benchmark for the locally prevailing wage amount. The prevailing wage not only encompasses hourly cash wages but also includes supplements, which are non-cash compensation benefits such as health and welfare, retirement, non-occupational disability, vacation and apprenticeship training. *See* N.Y. Lab. Law § 220(3) & (5)(b). The state determines a contractor's compliance with Section 220 by using, among other things, an annualization formula that calculates the hourly cash equivalent of public work supplements that contractors pay by dividing the actual cash value of a contractor's supplement contribution by the total number of hours employees worked annually on both public and private jobs. *See* N.Y. Comp.Codes R. & Regs. tit. 12, § 220.2(d)(1) (2001).[2]

---

* The Honorable Janet C. Hall of the United States District Court for the District of Connecticut, sitting by designation.

1. State law requires that "[t]he wages to be paid for a legal day's work ... to laborers, workmen (sic) or mechanics upon such public works, shall be not less than the prevailing rate of wages." N.Y. Lab. Law § 220(3) (McKinney 2001).

2. The regulations also provide for two other versions of the annualization formula that are not relevant to this appeal. *See id.* at § 220.2(d)(2)-(3).

Since at least September 1991, HMI has paid its supplemental benefits in the form of irrevocable contributions to benefit plans that CPI administers. All parties agree that the CPI plans are qualified welfare benefit plans under ERISA. Between May 1994 and October 1995, HMI performed work on a public project at Midlakes High School in Ontario County. According to plaintiffs' complaint, the project involved 8,796 hours of work and a $184,000 payroll. NYSDOL received complaints about HMI's compliance with Section 220 on the Midlakes High School project, and the state began an investigation in September 1995. The purpose of the investigation was to determine whether and to what extent the CPI plans to which HMI made supplement contributions on behalf of employees for work on public work projects pay out benefits to HMI employees for work other than on public work projects. Such a situation, sometimes called pooling, allows an employer to dilute the supplement benefits due each public work employee by spreading the benefits out to cover both public and private work. In connection with its investigation, NYSDOL requested HMI's payroll records for the project. Then in January 1999, the state requested a list of all HMI employees that participated in the CPI plan, information about HMI's contributions to the plan, and whether employees not shown on public work payrolls benefitted from contributions made on behalf of employees on public work projects. CPI responded to this request on behalf of HMI in February 1999 and refused to supply the information, claiming that the state was acting beyond its authority. The state ultimately issued a subpoena dated March 8, 1999, requiring HMI to supply the requested information. During this same period, the state requested information from CPI's president, Peter Strong, as part of a more general investigation of the practices of contractors using CPI plans. In a subpoena dated March 4, 1999, the state requested from Strong information tending to show whether supplement contributions that an employer made on behalf of public work employees benefitted other employees.

In response to the subpoenas, plaintiffs filed a complaint in federal court on March 12, 1999, seeking, among other things, a declaration that ERISA preempted the state's investigation into the internal allocation of supplemental wages within the CPI plans. After denying plaintiffs' initial requests for injunctive relief, the district court granted them a preliminary injunction by a memorandum-decision and order filed on July 8, 1999. Between the time of plaintiffs' complaint and their successful request for an injunction, NYSDOL issued a notice in April 1999 regarding enforcement of Section 220 (the "April Notice"). The notice states in relevant part:

The purpose of this notice is to remind all interested parties of the manner in which the New York State Department of Labor enforces Article 8 of the Labor Law (the prevailing wage law) with regard to the payment of prevailing supplements. Specifically, questions have arisen with regard to the payment of prevailing supplements into certain benefit plans. These questions have been exacerbated due to recent preemption litigation in federal court. The Department has prepared this notice concerning regulations found at 12 New York Code of Rules and Regulations Part 220 to correct any misunderstanding of the Department's policy and remind all affected parties of their obligations under the law.

Labor Law section 220 et seq., (the prevailing wage law) requires the payment of prevailing wages and supplements by contractors performing work on public

work projects. While the Department of Labor does not require the payment of any specific supplement, it does require, through the prevailing wage rate schedules it promulgates on an annual basis, a total supplement amount to be paid on behalf of each worker. A contractor's obligation to pay such supplement amount may be met by paying into a qualified benefit plan, paying cash to the worker, or some combination of these options.

It has come to the attention of the Department that certain benefit plans used by contractors may not comport with the requirements under the Labor Law or the Department's regulations. Specifically, some contractors, while making payments into benefit plans purportedly on behalf of individual workers engaged on prevailing wage projects, use such payments to obtain benefits for individuals other than those on whose behalf the payments were made. Alternatively, contractors may make payments for the period of time during which a worker is engaged on a public work project, yet use the payments to obtain benefits for a period of time during which the worker was engaged on a private project. In the above circumstances, it is clear that the contractor has not met the requirements of the Labor Law with regard to the payment of prevailing supplements. Because of the confusion over whether the Department could, under federal law, enforce these requirements, only contractors using such plans after June 15, 1999 will be found in willful violation of the law.

The benefit plan structure described in the April Notice as violating Section 220 purportedly was the same arrangement that HMI had with CPI. Based on the April Notice, the district court held that plaintiffs established irreparable harm because "CPI is in danger of suffering a loss of its customer base" if contractors reading the notice withdrew from the plan to avoid NYSDOL enforcement actions. The district court also held that plaintiffs showed a likelihood of success on the merits of their claim because the state (1) appeared to be using an improper alternative enforcement mechanism to ERISA when it examined "how wage supplement moneys deposited into an ERISA plan are put to use;" and (2) improperly intruded on plan administration when it focused on "the distribution of payments made to ERISA benefit plans." Because federal law exclusively governed this area of law, the state's actions appeared to be improper, the district court held.

The parties conducted discovery and filed cross-motions for summary judgment. By memorandum-decision and order filed on March 8, 2000, Judge Scullin granted summary judgment to defendants NYSDOL, lifted the preliminary injunction and closed the case. In its March decision, the district court held that it no longer appeared that the state was "attempting to control or regulate the monies deposited into the CPI plan by HMI." Instead, the district court held that the state could use an annualization formula to determine HMI's compliance with Section 220 because "the only information needed for the state's investigation was the total amount of money HMI deposited as benefits contributions into the CPI plan and the total number of hours that all of HMI's employees worked on all projects (public and private)." No ERISA preemption occurred, the district court held, because the state sought information "readily obtainable from an employer," placed no burden on an ERISA plan to comply with its investigation, did not require particular methods of record-keeping, and did not regulate "what happens to monies once deposited into the CPI plan." HMI and

CPI now appeal. Our review of a grant of summary judgment is *de novo.* *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107 (2d Cir.2000).

## DISCUSSION

HMI and CPI contend that ERISA preempts the state's efforts to enforce Section 220 with respect to HMI's contribution of prevailing wage supplements to the CPI plans. According to plaintiffs, the state is seeking to regulate the administration of an ERISA plan and control the level of contributions and benefits. Plaintiffs argue that the state's subpoenas and April Notice show its intent to examine the · internal allocation of benefits in the CPI plan and judge the adequacy of benefits distributed under the plan. Plaintiffs also contend that ERISA preempts the annualization formula that Judge Scullin found acceptable because it binds plaintiffs to a particular method of administering the ERISA plan and requires plaintiffs to make continuous calculations, adjustments and payments for Section 220 compliance. The state counters that it merely seeks to determine how much credit to give an employer regarding its prevailing supplement contributions to plans and that its Section 220 compliance investigation may have a direct impact on employers but only a permissible indirect impact on the ERISA plans.

### I. ERISA preemption standard

■ The parties agree on the relevant legal standards. ERISA is designed to provide comprehensive and uniform regulation of employee benefit plans by imposing requirements for reporting, disclosure and fiduciary · responsibility once an employer chooses to provide benefits, but it does not require employers to provide any particular benefits. *See Burgio and Campofelice, Inc. v. New York State Dep't of*

*Labor,* 107 F.3d 1000, 1007–08 (2d Cir. 1997). While federal laws generally do not preempt state action in fields of traditional state regulation, the preemption language of ERISA is expansive. *Id.* The statute supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [that ERISA covers]." 29 U.S.C. § 1144(a). Section 1144 "sought to preempt all state laws that *relate* to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA." *General Elec. Co. v. New York State Dep't of Labor,* 891 F.2d 25, 29 (2d Cir.1989) (internal quotation marks omitted). "A state law relates to employee benefit plans when it has connection with or reference to such plans, whenever it purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans." *Id.* (internal quotation marks and citations omitted).

■ In interpreting the statute's key phrase of "relate to," therefore, courts consider whether state laws have reference to or connection with ERISA plans and expand on those concepts. *See California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 324–25, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). If the state law acts "immediately and exclusively" on ERISA plans or the existence of ERISA plans is "essential to the law's operation," then preemption on "reference" grounds occurs. *Id.* at 325, 117 S.Ct. 832. Analyzing a state law's "connection" with ERISA plans requires the courts to consider ERISA's objectives and the effect of the state law on ERISA plans. *Id.* Because the "outer edges of ERISA preemption are difficult to discern," courts seek to limit the potentially expansive reach of the statutory phrase "relate to" and consider that the basic purpose of Section 1144 was "to avoid a

multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Burgio*, 107 F.3d at 1008 (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). Looking to a state law's effect on ERISA plans, there is no ERISA preemption if the state law "has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Id.* (internal quotation marks and citations omitted).

■ In summary, two kinds of state laws relate to ERISA for purposes of preemption: "those that 'mandat[e] employee benefit structures or their administration,' and those that 'provid[e] alternative enforcement mechanisms.'" *Burgio*, 107 F.3d at 1008 (quoting *Travelers*, 514 U.S. at 658, 115 S.Ct. 1671) (alterations in original). We must determine whether the state's prevailing wage statute, as NYSDOL enforces it through its annualization formula, falls within one of these prohibited categories.

## II. Application of standard

We twice have considered Section 220 in the context of ERISA preemption and have reached two different results. The distinction between the cases was the manner in which the state enforced Section 220—using the "line-item" approach or the "total package" policy. Under the line-item approach, the state labor commissioner prescribed prevailing benefits levels for each individual type of wage supplement and required employers to make up any deficit based on particular benefits. *See Burgio*, 107 F.3d at 1003. Importantly, "[t]he employer was not permitted to substitute one form of supplement for another, and received no credit under the statute for the cost of providing benefits not

deemed to be 'prevailing benefits' by the Commissioner." *Id.* at 1003–04. In *General Electric*, we held that the state's line-item approach to enforcing Section 220 violated ERISA preemption standards because the approach prescribed the type and amount of an employer's contributions to a plan, the rules and regulations under which a plan operated, and the nature and amount of the plan benefits. *See General Electric*, 891 F.2d at 29.

Under the total package policy, the state "requires employers to match the total cost of all prevailing supplements" and does not require employers to "match one-for-one the specific prevailing rate for each prevailing supplement, or even to provide each type of prevailing supplement." *Burgio*, 107 F.3d at 1004. We held that ERISA did not preempt the total package approach because the employer at its option may meet its Section 220 obligations in any form or combination—of contributions to ERISA plans, contributions to non-ERISA plans, or cash payments—as long as the total is not less than the locally prevailing benefits. *Id.* at 1009. An employer thus could comply with Section 220 without making any contribution to an ERISA plan if it so chose. Under the total package scheme, Section 220's effect on ERISA is too tenuous or peripheral to warrant preemption. *Id.* Importantly, in *Burgio* we also held that no preemption took place even though the state required employers to produce records showing that they had paid the prevailing wage and supplements, recognizing that the state thus placed slight administrative requirements on ERISA plans. *Id.* The state did not require that the records exist in any particular form. *Id.*

■ On this appeal, HMI and CPI contend that NYSDOL has retreated to the forbidden line-by-line approach to Section 220 enforcement. The state argues

that its action—including its use of the annualization formula—comports with the total package policy. The district court basically agreed with the state's characterization of its enforcement actions. Key to the district court's decision were these facts: (1) the state sought information readily obtainable from an employer and did not require a particular form of record-keeping; (2) the state did not require employers to pay any shortfall into an ERISA plan, did not prohibit the use of any ERISA plan, and did not hold ERISA plans accountable for employers' shortfalls; and (3) the state did not investigate the benefits that employees ultimately received. The district court acknowledged that the state's action might have an impact on *employers* by requiring them to increase contributions (to a plan, employee, or both), but there was no impermissible impact on *plans*. As the plaintiffs urge, we look primarily to the state's subpoenas and April Notice as an indication of its enforcement approach.

The second paragraph of the April Notice is a description of the acceptable total package approach. The controversy in this case stems from the third paragraph of the notice, which describes the state's desire to examine which employees—in the sense both of private project workers and public project workers who also put in time on private jobs—benefit from plans to which an employer makes irrevocable prevailing supplement contributions. The disputed subpoenas concern documents and records designed to support that examination, which looks to the effect of pooling plan contributions to benefit not only public workers but also private workers or public workers on private projects. In other words, the subpoenas sought to uncover whether employers were diminishing the prevailing wage protections for public projects by spreading the benefits over hours worked on private projects. Ac-

cording to plaintiffs, the state's inquiry improperly focuses on the internal allocation and adequacy of benefits, much like it did when examining benefits "line-by-line." In this sense, according to plaintiffs, the state's action wrongly mandates employee benefit structures and their administration. Plaintiffs' characterization is true to the extent that the state seeks to examine the benefits that plan participants receive. The wording of the March 8, 1999, subpoena to HMI is particularly troublesome because it seeks the identity and payout of employees that benefit from contributions to ERISA plans but are not listed on public works payrolls. The March 4, 1999, subpoena similarly is troubling to the extent that it concerns the allocation of contributions after a plan receives them from an employer. As discussed more fully below, however, it is not improper for the state to request records of employers' contributions to plans and the bases for those contributions.

Both the subpoenas and the April Notice identify the state's policy reason for its inquiry: to ensure that public project workers receive supplement contributions that employers make on their behalf. However, the state's actual means of achieving this policy goal does not run afoul of ERISA. During oral argument in district court, counsel for NYSDOL recognized that the state's initial subpoenas were too broad and that all the state required to know from employers was the total contributions to a plan and the total number of hours that an employee worked, information required for the annualization formula. Counsel for the state specifically disclaimed the need for information concerning the actual allocation of benefits to employees, or the need "to trace the assets through their several layers of bookkeeping [to] see how it goes, see how much somebody actually gets in

their hands when they retire or what happens to their investments." Thus, contrary to plaintiffs' contention, NYSDOL is not examining the accrual or distribution of benefits under ERISA plans.

The state is not through its inquiry mandating a particular benefit structure for ERISA plans, which was the crucial issue in *General Electric*. NYSDOL does not require employers or ERISA plans to provide specific benefits, and it does not require plans to exclude participants who perform work on private projects. We agree with plaintiffs that the subpoenas are overbroad to the extent that they seek the amount of benefits that employees receive. The district court recognized this in its decision, which focused on NYSDOL's representations of its investigation as not touching upon this inappropriate request. However, information such as a list of plan participants, payroll lists, the amount of an employer's contributions and the names of people for whom the employer made contributions are appropriate areas of inquiry substantially similar to the record production we approved in *Burgio*. *Burgio*, 107 F.3d at 1009.

The plaintiffs particularly focus on the state's use of the annualization formula, which *Burgio* did not explicitly consider. According to plaintiffs, the formula involves a judgment about the adequacy of ERISA benefits and binds parties to a particular method of administering the ERISA plan. We disagree with plaintiffs' characterization. The record before us demonstrates that the state seeks to examine total contributions and in no way requires employers to make particular contributions to an ERISA plan, which we held in *General Electric* to be improper. *See General Electric*, 891 F.2d at 29. Unlike the situation in that case, NYSDOL is not examining employer contributions on a benefit by benefit basis. The April Notice itself states that employers may meet their payment obligations in ways other than paying into an ERISA plan, an approach we approved in *Burgio*. *See Burgio*, 107 F.3d at 1009.

The annualization formula calculates the level of prevailing supplement contributions by dividing the employer's total actual contribution on behalf of its workers by the total annual hours (both public and private) that an employee worked. According to HMI, this formula always results in a shortfall in its contributions if an employee performed any private work during the period analyzed. However, that is precisely the desired effect of Section 220, which creates an economic disincentive for employers to use pooled supplement plans. The information that the state requires to apply the annualization formula is precisely what we contemplated in *Burgio*. *Id.* Furthermore, the formula on its face is concerned with the level of the employer's contribution rather than the benefit that any worker receives, so it is consistent with the total package approach. Simply because the annualization formula devalues employers' total contributions does not make it an improper line-item examination of ERISA benefits.

The current enforcement method of NYSDOL thus directly affects employers by eliminating incentives for them to pool supplement contributions among public and private workers, but it only indirectly affects ERISA plans because the state does not require employers to use a certain kind of plan or even to provide a certain mix of benefits. ERISA does not preempt a law that uses economic incentives in this way. *See Dillingham*, 519 U.S. at 332, 117 S.Ct. 832 (upholding California prevailing wage law that allows payment of lower apprenticeship wage to workers in state-approved program). Both the April Notice and the subpoenas

clearly state NYSDOL's policy interest under Section 220 in creating a disincentive for the practice of pooling supplement contributions. But the state's method of achieving this policy falls within the contours of *Burgio*'s total package approach.

## CONCLUSION

For the forgoing reasons, we affirm the judgment of the district court. We only clarify and make explicit in that judgment its holding that the state may not seek information regarding the actual benefits that employees receive.